UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 18-2633(DSD/SER)

Mark Williams,

      Petitioner,

v.                                        **ORDER**

Jeff Sessions, Attorney General,
Kirstjen Nielsen, Secretary,
Department of Homeland Security;
Peter Berg, Director, St. Paul
Field Office, Immigration and
Customs Enforcement; and Warden
of Immigration Detention Facility,

      Respondents.

This matter is before the court upon petitioner Mark Williams' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Based on a review of the file, record, and proceedings herein, and for the following reasons, the petition is denied.

**BACKGROUND**

On October 12, 1997, Williams entered the United States through the port of New Orleans. Siekert Decl. Ex. A at 2. Williams arrived as a stowaway aboard the M/V Princess Margarita and did not have identification. Id. In his initial immigration interviews, Williams claimed that he was born on March 16, 1977, in Liberia and was a Liberian citizen. Id. at 3, 5. He further stated that his parents, Sam and Lucy Williams, were also Liberian citizens from Monrovia and that he and his family spoke Krahn and

English.  Id. at 5.  Williams claimed that he attended the Maryland primary school in Monrovia from 1984 through 1989.  Id. at 5, 15.  Williams claimed that his last permanent Liberian address was 021 Bensons Street, Monrovia.  Id. at 15.

On October 21, 1997, Williams applied for asylum, claiming that his life was in danger in Liberia and that the Charles Taylor government had murdered members of his family in 1994 because of his father's political activities.  Id. at 8.  On January 16, 1998, the Immigration Judge (IJ) granted Williams' request for asylum.  Id. at 20.

Williams has an extensive criminal history.  Id. at 177-78.  On October 17, 2007, Williams was convicted in North Dakota of gross sexual imposition (GPI) and sentenced to ten years in prison.  Id. at 178.  On June 28, 2008, Williams provided a sworn statement to federal immigration officials identifying his father as Benjamin, not James, Williams.  Id. at 69.  On August 25, 2008, the IJ reopened Williams' asylum proceeding because the GPI conviction rendered him ineligible for asylum status.  Id. at 79.

On January 30, 2014, Williams provided another sworn statement representing that his parents were from Todee Town and Bomi County, Liberia, not Monrovia.  Id. at 85.  Williams also claimed that before leaving Liberia, his permanent address was 2100 Johnson Street, not 021 Bensons Street, Monrovia.  Id.  On March 4, 2014, Williams completed his GPI sentence and was transferred from state

criminal custody to federal immigration custody. Id. at 94; see also Miner Decl. ¶ 32.

On June 2, 2014, the IJ denied Williams' renewed request for asylum and his additional requests for withholding of removal and deferral of removal under the convention against torture. Siekert Decl. Ex. A at 149. The same day, the IJ ordered Williams removed from the United States. Id.

On June 9, 2014, federal immigration officials contacted the Liberian Embassy to process Williams' removal. Id. at 150. However, the Liberian Embassy was not processing repatriation requests at that time. Miner Decl. ¶ 34. On September 16, 2014, federal immigration officials released Williams on supervision conditions because there did not appear to be a significant likelihood of his removal to Liberia in the foreseeable future. Id. ¶ 35; see also Siekert Decl. Ex. A at 160.

On May 16, 2016, Williams was convicted in North Dakota of failure to register as a sex offender and sentenced to 245 days in prison. Siekert Decl. Ex. A at 177. On March 28, 2016, Williams was convicted in North Dakota of disorderly conduct and sentenced to 360 days in prison. Id.

On February 15, 2018, Williams was transferred from state criminal custody to federal immigration custody, where he remains. Miner Decl. ¶ 40. On May 16, 2018, federal immigration officials notified Williams that he would remain in immigration detention

until removed from the United States because he was a community threat. Siekert Decl. Ex. A at 186.

In mid 2018, federal immigration officials learned that the Liberian Embassy was processing repatriation requests for Liberian citizens, even if the Liberian citizen never held a Liberian passport. Miner Decl. ¶ 41. On July 19, 2018, Williams was interviewed by the Liberian Embassy. Id. On August 14, 2018, the Liberian Embassy informed federal immigration officials that it would not issue a travel document at that time because Williams had tribal scars not often found in Liberia and he did not know various common facts about Liberia. Id. ¶ 42. The Liberian Embassy opined that Williams may be from Nigeria. Id. To date, the Liberian government has not issued a final order denying Williams a travel document. Id. On October 3, 2018, the Nigerian Consulate advised federal immigration officials that there is no evidence that Williams was Nigerian and that it would not conduct an interview or entertain a travel document request. Id. ¶ 48.

On October 5, 2018, Williams told federal immigration officials that he actually had never attended the Maryland primary school in Monrovia and did not speak Krahn. Id. ¶ 52. Williams also stated that his family had intentionally scarred him for his protection and identification in the event that he was separated from them. Siekert Decl. Ex. A at 191.

The same day, federal law enforcement officials listened to two recorded jail-house telephone calls Williams placed from the Sherburne County Jail to an unknown women and his son. Miner Decl. ¶ 54. Williams told the women that federal immigration officials will not be able to deport him because he was a stowaway on a ship and there are no documents establishing his Liberian citizenship. Id. Williams told his son that federal immigration officials are "stupid" and that they will have to release him after six months because they could not establish his citizenship or nationality. Id.

In October 2018, federal immigration officials obtained information that Williams was likely a Ghanaian native and citizen and has been lying about his Liberian background to secure asylum status. Id. ¶ 50. In addition, federal immigration officials now believe that Williams' scars are Ghanaian tribal markings. Id. ¶ 53. Federal immigration officials conducted a records query in the United States Department of State's Consular Consolidated Database and found that in early 1997, a Ghanaian citizen named Mark Williams completed, and had denied, a B1/B2 non-immigrant visa application through the United States Embassy in Ghana. Id. ¶ 55. The Ghanaian Mark Williams' purported birth date is within eighteen months of petitioner Williams' purported birth date. Id. Based on the name and similar birth date, federal immigration officials believe that Williams may be this Ghanaian national. Id. ¶ 56.

5

However, the denied visa application does not contain a photograph or other biometric identifiers to confirm whether Williams is in fact this Ghanaian national.  Id.

The Ghanaian Embassy has been issuing travel documents for Ghanaian citizens in federal immigration custody if there is evidence of their citizenship, such as a birth certificate.  Id. ¶ 57.  Federal immigration officials have been working with the Ghanaian Embassy to secure Williams' repatriation.  Id.

In the instant petition, Williams seeks release from federal immigration custody until he is deported.  He argues that the Fifth Amendment Due Process Clause prohibits indefinite immigration detention pending execution of a removal order.  Williams claims that the Liberian Embassy informed him that it cannot issue a travel document for him in the reasonably foreseeable future.

The government argues that Williams' continued detention is constitutional, and his removal to either Liberia or Ghana is reasonably foreseeable.  The government also argues that any undue delay in executing Williams' removal order is attributable to Williams repeatedly misrepresenting his background, identity, and citizenship.

**DISCUSSION**

**I. Standard of Review**

An alien, such as Williams, challenging the legality of his

6

detention may petition for a writ of habeas corpus under § 2241, seeking immediate release. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 307 (1993). Freedom from imprisonment, government custody, detention, or other forms of physical restraint lies at the heart of the liberty the Due Process Clause protects. Foucha v. Louisiana, 504 U.S. 71, 80 (1992).

**II.    Relevant Law**

8 U.S.C. § 1231 generally governs the process by which an alien is to be removed after they have been ordered removed. First, once an alien has been ordered removed, the attorney general is required to take the alien into custody. 8 U.S.C.   § 1231(a)(2). The attorney general is then required to remove the alien from the United States "within a period of 90 days." 8 U.S.C. § 1231(a)(1). Under 8 U.S.C. § 1231(a)(6), the 90-day removal and detention period may be extended for "certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens [ordered removed] for ... national security or foreign relations reasons, as well as ... aliens ... determined ... to be a risk to the community ...." Zadvydas, 533 U.S. at 687. Section 1231(a)(6) does not contain an explicit extended detention time limit, but the Supreme Court has

held that a removal order detention period of up to six months is "presumptively reasonable." Zadvydas, 533 U.S. at 701.

Williams is currently being detained under § 1231(a)(6). Williams' detention pending deportation commenced on February 15, 2018, when he was transferred from state criminal custody to federal immigration custody. See 8 U.S.C. § 1231(a)(1)(B)(iii). Therefore, Williams' immigration detention now exceeds the presumptively reasonable six-month period.

"After [the] six-month period has expired, an alien may seek conditional release by providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' which then requires the government to 'respond with evidence sufficient to rebut that showing.'" Ahmed v. Brott, No. 14-5000, 2015 WL 1542131, at *3 (D. Minn. Mar. 17, 2015)(quoting Zadvydas, 533 U.S. at 701). "The longer the alien's post-removal detention, the easier it is for him to satisfy his initial burden ... because 'what counts as the reasonably foreseeable future shrinks as the period of prior postremoval confinement grows.'" Id. (quoting Zadvydas, 533 U.S. at 701). Courts have found no significant likelihood of removal in five circumstances: (1) the detainee is stateless and no country will accept him; (2) the detainee's country of origin refuses to issue a travel document; (3) the United States does not have a repatriation agreement with the detainee's native country; (4)

political conditions in the detainee's country of origin render removal virtually impossible; and (5) the delay in issuing travel documents warrants an inference that the documents will likely never issue.  Id. (collecting cases).

**III. Williams' Detention**

Williams has not shown that there is no significant likelihood of his removal in the reasonably foreseeable future. It has not been established that Williams is stateless and that no country will accept him.  Assuming Williams is Ghanaian, the government offers evidence that it is working with the Ghanaian Embassy to verify Williams' citizenship and that the Ghanaian Embassy regularly processes travel documents for its citizens.  Assuming Williams is Liberian, as he has steadfastly asserted, the record shows that the Liberian Embassy has not issued a final order denying a travel document or, like the Nigerian Consulate, stated that it will not entertain a travel document request.  Indeed, the record shows that the Liberian Embassy issues travel documents for Liberian citizens, even those without a Liberian passport.  The Liberian Embassy simply cannot establish Williams' Liberian citizenship at this time and seeks additional information. Moreover, the United States appears to have repatriation agreements with Liberia and Ghana, and the record does not show that the political conditions in Liberia or Ghana render removal virtually impossible.  To the contrary, both embassies are functioning and

9

working closely with federal immigration officials. Finally, the delay in issuing travel documents here does not warrant an inference that those documents will likely never issue.

To the extent there is delay, it is attributable to Williams' pattern of providing contradictory if not disingenuous information to federal immigration officials. When an alien refuses to cooperate in securing his removal, or actively thwarts the removal process, he can be detained for longer than the Zadvydas presumptively reasonable six-month period. Hydara v. Doe, 324 Fed. Appx. 534 (8th Cir. 2009); Moses v. Lynch, No. 15–4168, 2016 WL 2636352, *3 (D. Minn. Apr. 12, 2016); Lema v. INS, 341 F.3d 853, 856 (9th Cir. 2003); Pelich v. INS, 329 F.3d 1057, 1059–61 (9th Cir. 2003); Davis v. Gonzales, 482 F. Supp. 2d 796, 800–01 (W.D. Tex. 2006); Powell v. Ashcroft, 194 F. Supp. 2d 209, 212 (E.D.N.Y. 2002); see also 8 U.S.C. § 1231(a)(1)(C). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." Ndenge v. Gonzales, No. 07–1726, 2008 WL 682091, at *2 (D. Minn. Mar. 6, 2008) (internal citation omitted).

Here, the record and Williams' conduct raises a strong suspicion that he is obstructing his removal to secure conditional release. Until the court is confident that Williams is participating in good-faith in the removal process, it cannot

conclude that his post-removal order detention violates the Due Process Clause of the Fifth Amendment. As a result, Williams' petition must be denied.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus [ECF No. 1] is denied; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 16, 2019

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court